UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------------------ X
OMAR CONTRERAS, ANTONIO DE LA ROSA, :
and CARMEN LLIGUICOTA, on behalf of : **No. 25 Civ. 1359**
themselves and all others similarly situated, :
 :
                Plaintiffs, : **COLLECTIVE AND**
 : **CLASS ACTION**
      -against- : **COMPLAINT**
 :
MATTRESS DIRECT INC. and AHMAD SCHUAIB, :
 : **JURY TRIAL DEMANDED**
                Defendants. :
------------------------------------------------------------------------ X

Plaintiffs Omar Contreras, Antonio de la Rosa, and Carmen Lliguicota (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated factory workers ("factory workers"), by their attorneys Pechman Law Group PLLC, complaining of Defendants Mattress Direct Inc. and Ahmad Schuaib (collectively "Defendants"), allege:

## NATURE OF THE ACTION

1. Plaintiffs worked as non-exempt factory workers at Mattress Direct Inc. in Patterson, New Jersey. Despite regularly working more than forty hours per workweek, Defendants paid Plaintiffs on a weekly rate, which failed to compensate Plaintiffs at the statutorily required overtime wage rate of time and a half their regular hourly wage rates for hours worked over forty per workweek.

2. Plaintiffs bring this action on behalf of themselves and all similarly situated non-exempt factory workers to recover unpaid overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11 – 56(a) *et seq.* ("NJWHL").

## JURISDICTION

3. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4. This Court also has diversity jurisdiction over this case based on diversity of the named Plaintiffs and Defendants, and the amount in controversy exceeds $5,000,000 for the class as required under 28 U.S.C. § 1332(d).

## VENUE

5. Venue is proper in the District of New Jersey under 28 U.S.C. § 1391, because the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

**Plaintiff Omar Contreras**

6. Omar Contreras resides in Kings County, New York.

7. Contreras worked as a box spring builder and wrapper, a non-exempt factory worker, for Defendants from approximately 2016 or 2017 to November 14, 2024.

**Plaintiff Antonio de la Rosa**

8. Antonio de la Rosa resides in Queens County, New York.

9. De la Rosa worked as a box spring builder and wrapper, a non-exempt factory worker, for Defendants from approximately 2007 to January 8, 2025.

**Plaintiff Carmen Lliguicota**

10. Carmen Lliguicota resides in Queens County, New York.

11. Lliguicota worked as a sewer, a non-exempt factory worker, for Defendants from approximately August 2008 to January 3, 2025.

**Defendant Mattress Direct Inc.**

12. Defendant Mattress Direct Inc. ("Mattress Direct") is a New Jersey corporation headquartered at 101 Thomas St, Paterson, New Jersey 07503.

13. Mattress Direct is in the business of mattress manufacturing, refurbishment, and distribution.

14. Mattress Direct is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

15. Mattress Direct has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

16. In each of the three years preceding the filing of this Complaint, Mattress Direct's annual gross volume of sales exceeded $500,000.

**Defendant Ahmad Schuaib**

17. Defendant Ahmad Schuaib is an owner and operator of Mattress Direct.

18. Upon information and belief, Schuaib resides in New Jersey.

19. Mattress Direct employees know and refer to Schuaib as "Alex."

20. Throughout Plaintiffs' employment, Shuaib was regularly present at worksites. For example, Shuaib distributed employees' wages on Fridays or Saturdays.

21. Shuaib authorized the hiring and firing of Mattress Direct employees. For example, Shuaib fired Contreras, de la Rosa, and Lliguicota.

22. Shuaib determined the wage rates of Mattress Direct employees, including the wage rates of Plaintiffs. For example, employees would speak to Shuaib whenever they wanted an increase in wages.

23. Shuaib determined the schedules of Mattress Direct employees, including Plaintiffs' schedules. For example, factory workers, including Plaintiffs, contacted Shuaib to request days off.

24. Shuaib exercised sufficient control over the operations of Mattress Direct to be considered Plaintiffs' employer under the FLSA and NJWHL.

**Recidivist Defendants**

25. In 2018, Defendants settled the claims for unpaid minimum and overtime wages of a former employee who filed a class and collective action suit against them before the United States District Court for the Eastern District of New York. *See Murillo Rivas v. Beauty Sleep Inc.*, No. 1:18-cv-04060-SMG (E.D.N.Y. filed July 16, 2018).

26. Since at least 2018, Defendants have been aware that their wage payment practices and policies are unlawful in that they failed to compensate factory workers for overtime wages owed, yet Defendants did not change them.

### FACTUAL ALLEGATIONS

27. As their primary work duties, Plaintiffs and other factory workers sewed mattress covers and mattresses, prepared and cleaned old mattresses for refurbishment, built and wrapped box springs, and operated machines that prepared mattresses for distribution within the facility.

28. Plaintiffs and other factory workers were assigned and performed the same work duties.

29. Defendants paid Plaintiffs and other factory workers their wages in cash on a weekly basis.

**Contreras's Hours Worked and Wages Paid**

30. Throughout his employment, Contreras regularly worked approximately 50.5 hours per workweek as a box spring builder and wrapper, Monday through

Saturday from approximately 8:00 a.m. to 5:00 p.m., with a thirty-five-minute lunch break per workday.

31. Around or during the COVID-19 pandemic and for approximately one year, Defendants required Contreras to frequently work past his regular end time, as late as 8:00 p.m. to 10:00 p.m. per workday, and sometimes worked on Sundays.

32. For example, in approximately April 2020, Defendants required Contreras to work Monday to Saturday 8:00 a.m to 10:00 p.m., with a thirty-five minute lunch break, and Sunday 8:00 a.m. to 3:00 p.m., with a thirty-five minute lunch break.

33. From approximately 2019 to December 2022, Defendants paid Contreras $900 per workweek. When Defendants required Contreras to work past his regular end times, Defendants paid Contreras $20 per hour worked after 5:00 p.m. and $150 for hours worked on Sundays.

34. From approximately January 2023 to April 2024, Defendants paid Contreras $950 per workweek.

35. From approximately April 2024 through the end of his employment, Defendants paid Contreras $1000 per workweek.

36. Defendants did not pay Contreras at the rate of one and one-half times his regular hourly wage rate for hours worked in excess of forty per workweek.

**De la Rosa's Hours Worked and Wages Paid**

37. Throughout his employment, de la Rosa typically worked approximately 42 hours per workweek as a box spring builder and wrapper, Monday through Friday from approximately 8:00 a.m. to 5:00 p.m., with a thirty-five minute lunch break per workday. Defendants occasionally required de la Rosa to work on Saturdays.

38. Around or during the COVID-19 pandemic and for approximately one year, Defendants required de la Rosa to frequently work past his regular end time, as late as 8:00 p.m. to 10:00 p.m.

39. For example, in approximately April 2020, Defendants required de la Rosa to work Monday to Saturday 8:00 a.m to 10:00 p.m., with a thirty-five minute lunch break, for a total of approximately seventy-two hours.

40. From approximately 2019 through December 2022, Defendants paid de la Rosa $800 per workweek. When Defendants required de la Rosa to work past his regular end times, Defendants paid de la Rosa $20 per hour worked after 5:00 p.m.

41. From approximately January 2023 to December 2023, Defendants paid de la Rosa $850 per workweek.

42. From approximately January 2024 through the end of this employment, Defendants paid de la Rosa $1,000 per workweek.

43. Defendants did not pay de la Rosa at the rate of one and one-half times his regular hourly wage rate for hours worked in excess of forty per workweek.

**Lliguicota's Hours Worked and Wages Paid**

44. Throughout her employment, Lliguicota typically worked approximately between thirty-four and fifty hours per workweek as a sewer, between four to six days per workweek, from approximately 8:00 a.m. to 5:00 p.m., with a thirty-five minute lunch break per workday.

45. For example during the week of December 16, 2024, Lliguicota worked Monday to Friday, from approximately 8:00 a.m. to 5:00 p.m., with a thirty-five minute lunch break per workday, for approximately forty-two hours.

46. Around or during the COVID-19 pandemic and for approximately one year, Defendants required Lliguicota to frequently work past her regular end times, as late as 8:00 p.m.

47. For example, during the week of June 15, 2020, Lliguicota worked Monday to Saturday, from approximately 8:00 a.m. to 8:00 p.m., with a thirty-five minute lunch break per workday, for approximately fifty-seven hours.

48. From approximately 2019 through 2020, Defendants paid Lliguicota approximately $460 per workweek. When Defendants required Lliguicota to work past her regular end times, Defendants paid Lliguicota $20 per hour worked after 5:00 p.m.

49. From approximately 2021 through 2022, Defendants paid Lliguicota approximately $550 per workweek.

50. From 2023 through the end of her employment, Defendants paid Lliguicota approximately $600 per workweek.

51. Defendants did not pay Lliguicota at the rate of one and one-half times her regular hourly wage rate for hours worked in excess of forty per workweek.

**COLLECTIVE ACTION ALLEGATIONS**

52. Plaintiffs bring this action on behalf of themselves and all similarly situated persons who have worked as factory workers (i.e., non-exempt workers) for Mattress Direct within the three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

53. The FLSA Collective consists of approximately fifty factory workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime pay.

54. Throughout Plaintiffs' employment periods, Plaintiffs and the FLSA Collective have had work schedules consisting of over forty hours per workweek, have

performed virtually the same work duties, and have been subjected to Defendants' common pay policies depriving them of overtime pay at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

55. Defendants are aware or should have been aware that the FLSA required them to pay factory workers an overtime premium for hours worked in excess of forty per workweek.

56. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

57. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it. All similarly situated factory workers can be readily identified and located through Defendants' records. The similarly situated factory workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

58. Plaintiffs bring their claims in this Complaint arising under the NJWHL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated factory workers who work or have worked for Defendants within the last six years (the "Rule 23 Class").

59. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

60. The size of the Rule 23 Class is slightly more than one hundred individuals, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendants.

61. Defendants have acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

62. Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

   a. Whether Defendants violated the NJWHL and its supporting regulations as alleged in this Complaint;

   b. Whether Defendants failed to pay overtime wages to Plaintiffs and other Rule 23 Class members for time worked in excess of 40 hours per workweek, as required by the NJWHL; and

   c. Whether Plaintiffs and the Rule 23 Class have sustained damages and, if so, the proper measure of such damages.

63. Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable six-year statutory period. They enjoy the same statutory rights under the NJWHL to be paid at the overtime rate for all hours worked over forty in a workweek. Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NJWHL.

64. Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

65. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

66. Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

67. There is no conflict between Plaintiffs and the Rule 23 Class members.

68. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

69. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(Fair Labor Standards Act – Unpaid Overtime)**

70. Plaintiffs incorporate all paragraphs above by reference.

71. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates, which cannot be less than the applicable minimum wage rate, per hour worked in excess of forty per workweek.

72. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 207(a) and employed Plaintiffs and the FLSA Collective.

73. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

74. Defendants are recidivist violators of the overtime provisions of the FLSA.

75. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

76. Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New Jersey Wage and Hour Law – Unpaid Overtime)

77. Plaintiffs incorporate all paragraphs above by reference.

78. Under the NJWHL, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular rates of pay for all hours that they worked in excess of 40 hours in a workweek.

79. Plaintiffs and the Rule 23 Class typically worked more than 40 hours per week.

80. Defendants failed to pay Plaintiffs and the Rule 23 Class members the overtime wages to which they were entitled under the NJWHL.

81. Defendants' violation of the wage payment requirements of the NJWHL was part of their regular business practice and constituted a pattern and/or policy.

82. Defendants are recidivist violators of the overtime wage law.

83. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to

comply with the NJWHL with respect to the compensation of Plaintiffs and the Rule 23 Class.

84. Defendants willfully violated the NJWHL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class members overtime wages.

85. Due to Defendants' willful violations of the NJWHL, Plaintiffs and the Rule 23 Class members are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a. certify this case as a class action pursuant to Rule 23 for the class of employees described in this Complaint, appoint Plaintiffs as the class representatives, and designate Plaintiffs' counsel as Class Counsel;

b. designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c. declare that Defendants violated the overtime pay provisions of the FLSA and the NJWHL;

d. declare that Defendants' violations of the FLSA and NJWHL were willful;

e. award Plaintiffs, the FLSA Collective, and the Rule 23 Class their unpaid overtime wages;

   f. award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NJWHL;

   g. award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NJWHL;

   h. award Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NJWHL; and

   i. award such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
    February 20, 2025

            PECHMAN LAW GROUP PLLC

            By: */s/ Louis Pechman*
              Louis Pechman
              Gianfranco J. Cuadra*
              PECHMAN LAW GROUP PLLC
              488 Madison Avenue, 17th Floor
              New York, New York 10022
              Tel.: (212) 583-9500
              pechman@pechmanlaw.com
              cuadra@pechmanlaw.com

              *Attorneys for Plaintiffs, the Putative FLSA Collective, and Putative Rule 23 Class*

              **pro hac vice* admission pending*